Palmer v. Smith                    CV-95-598-SD  08/20/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


B. Irene Palmer;
Donald R. Palmer

    v.                                      Civil No. 95-598-SD

David Smith, et al


                        O R D E R


    In this civil action, plaintiff B. Irene Palmer and her

husband bring claims pursuant to 42 U.S.C. § 1983 and numerous

state laws arising from the treatment Mrs. Palmer received while

working at Pheasant Wood Nursing Home, Inc., in Peterborough, New

Hampshire.[1]  More specifically, Irene Palmer, a former medical

records clerk and ward clerk, alleges that David Smith, an

administrator at Pheasant Wood, committed a number of egregious

acts against her over a year's time, culminating in an episode in

which he staged her arrest in front of her co-workers.

    Presently before the court is a motion for judgment on the

pleadings pursuant to Rule 12(c), Fed. R. Civ. P., brought by

defendants Pheasant Wood Nursing Home, Inc., and Sowerby

_____

    [1]Also included in the complaint is a claim for loss of
consortium brought by plaintiff's husband Donald R. Palmer.

Healthcare, Inc.[2]  As both parties relied on matters outside the pleadings, the court converted defendants' Rule 12(c) motion to one for summary judgment with respect to the claims against Sowerby.  The court gave the parties appropriate notice of the conversion by order dated July 11, 1996, and granted the parties time to supplement their motions, which has now since passed.  Also before the court is plaintiffs' objection to a ruling of Magistrate Judge Muirhead denying plaintiffs' petition to attach the property of Sowerby Healthcare and Pheasant Wood.

## Background

In March of 1994, when David Smith was first hired as the administrator of the Pheasant Wood Nursing Home, he placed a telephone call to B. Irene Palmer, a veteran employee of seventeen years.  After identifying himself, he breathed heavily into the telephone.  Complaint ¶ 21.  When later confronted by Palmer, he informed her that he "just wanted to give an old lady a thrill."  Id.

At a business meeting held at the corporate office of Sowerby Healthcare, Inc., the next month, an employee (apparently of the Home) displayed on the overhead projector a photograph of

---

[2]Also pending at this time is plaintiff's motion to amend (document 45).  As defendants' objection is not due until September 3, 1996, the court defers ruling on this motion.

Palmer holding a "vegetable penis".  Id. ¶ 23.  The photograph had been taken at a December 1993 Christmas party of the Home, at which Palmer had been given a shoe box containing the item, which consisted of a vegetable shaped like a penis that had been decorated with whipped cream on one end and a hair net on the other.  Id. ¶ 17.  Dwight Sowerby, owner of Sowerby Healthcare, laughed at the picture and did not try to stop the display.  Id. ¶ 24.

When Palmer returned to the Home, Smith asked her if anything "unusual" had occurred at the meeting, and she replied in the negative.  Id. ¶ 26.  He then responded that he was going to post a blow-up of the photograph on his office wall, which he in fact later did.  Id. ¶¶ 27, 28.  Smith also showed the picture, mounted on the back of a piece of carpet, to other individuals at the Home.  Id. ¶ 29.  In addition, in June of 1994, Palmer witnessed Smith showing a volunteer the photograph and remarking, "Now we know what her mouth is full of."  Id. ¶ 34.

Palmer asked Smith on numerous occasions to destroy the photograph.  He refused, telling her that he would continue showing it to staff members.  Id. ¶ 30.  Furthermore, the senior administrator told Smith to get rid of the photograph, but he did not comply.  Id. ¶¶ 32, 33.

3

On March 31, 1995, Smith paged Palmer over the intercom and asked that she come to his office. Id. ¶ 35. When Palmer arrived, Richard Daigle, a bailiff from the Jaffrey-Peterborough District Court, and Bruce McCall, a Peterborough police officer, were present. Id. ¶ 37. Palmer knew that Daigle's mother-in-law was a resident of the Home, and assumed there was a billing problem. Id. ¶ 38. Daigle, with his gun and badge showing, moved toward Palmer and said, "I hate to do this but it is my job. I have to take you out of here in handcuffs. I have been ordered by the Court to take you downtown." Id. ¶ 39. When Palmer asked Smith what was happening, he replied that he did not know. Id. ¶ 40. Daigle said it had something to do with Medicaid fraud. Id.

Daigle escorted Palmer and Smith to the front desk of the Home, where he handcuffed Palmer to Smith. Id. ¶ 41. Palmer was then taken by Daigle out the front door, past McCall, who was standing at the door in an "authoritative" stance, to a police cruiser. Id. ¶ 42. As Palmer was about to be placed in the car by Daigle, other employees of the Home snapped photographs. Id. ¶ 43. Smith then informed Palmer that the whole incident had been a "joke". Id. ¶ 44.

After the arrest incident, Palmer continued to come to work, but she complained about the actions of those involved. Id. ¶

4

47. Smith told her, "What goes around . . . comes around. If you go to see the Police Chief, trouble could be made for you." Id. Palmer resigned on June 30, 1995. Id. ¶ 48.

Discussion

A. Judgment on the Pleadings Standard

Under Rule 12(c), Fed. R. Civ. P., "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion." Metromedia Steakhouses Co., L.P. v. Resco Management, 168 B.R. 483, 485 (D.N.H. 1994) (citation omitted). "In reviewing the defendants' motion for judgment on the pleadings . . . the court must accept all of the factual averments contained in the complaint as true and draw every reasonable inference helpful to the plaintiff's cause." Sinclair v. Brill, 815 F. Supp. 44, 46 (D.N.H. 1993) (citing Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991)); see also Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("because rendition of judgment in such an abrupt fashion represents an extremely early assessment of the merits of the case, the trial court must accept all of the nonmovant's well-

5

pleaded factual averments as true and draw all reasonable inferences in his favor") (citations omitted).

Even then, judgment may not be entered on the pleadings "'"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."'" Rivera-Gomez, supra, 843 F.2d at 635 (quoting George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2d Cir. 1977) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957))).

1.  Count XVI:  Claims under 42 U.S.C. § 1983 Against Sowerby Healthcare and Pheasant Wood

Count XVI of the complaint alleges that Sowerby Healthcare and Pheasant Wood are liable for the actions of Smith under the doctrine of respondeat superior, including, inter alia, violations of 42 U.S.C. § 1983.

Sowerby Healthcare and Pheasant Wood argue that any claims against them under section 1983 must be dismissed because such statute does not recognize claims against an employer premised on principles of respondeat superior.  See Polk County v. Dobson, 454 U.S. 312, 325 (1981).

Section 1983 applies to "[e]very person who, under color [of law] subjects, or causes to be subjected, any [other person] to

the deprivation of [constitutional rights]."  The First Circuit

has observed that a private corporation cannot be held

vicariously liable under section 1983 for the acts of its

employees.  See Lyons v. National Car Rental Sys., Inc., 30 F.3d

240, 246-47 (1st Cir. 1994).[3]  The First Circuit reasoned that

the rule of law applicable to the liability of municipal

governments, is also generally applicable to private

corporations.  Lyons, supra, 30 F.3d at 246.

> [A] local government may not be sued under § 1983
> for an injury inflicted solely by its employees or
> agents.  Instead, it is when execution of a
> government's policy or custom, whether made by its
> lawmakers or by those whose edicts or acts may
> fairly be said to represent official policy,
> inflicts the injury that the government as an
> entity is responsible under § 1983.

Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694

(1978)

Although conceding that defendants cannot be held

vicariously liable under section 1983, plaintiffs argue that

defendant Pheasant Wood has direct liability to them because it

had knowledge of Smith's violative conduct and failed to protect

Irene Palmer.  More specifically, plaintiffs assert that Pheasant

Wood exercised deliberate indifference to and tacit authorization

---

[3]The Lyons court makes this statement in the course of
determining whether under the Massachusetts Civil Rights Act,
Mass. Gen. L. ch. 12 § 11I, the scope of employer liability is
greater than that available under section 1983.

of Smith's continuing course of conduct "which created an environment which fostered an unreasonable risk of constitutional injury to plaintiff."  Plaintiff's Objection to Motion for Judgment on the Pleadings ¶ 9.

Plaintiffs' argument fails for several reasons.  First, although plaintiffs have attempted to argue that Pheasant Wood is directly liable for its own conduct, such contention merely dresses the vicarious liability argument in new garments. Plaintiffs are in essence arguing that Pleasant Wood is liable for the failure of its managerial employees to protect Irene Palmer, given their knowledge of, participation in, and/or deliberate indifference to Smith's conduct.  Given that the doctrine of respondeat superior cannot be employed to hold a private corporation liable under section 1983, plaintiff's argument plainly fails.

Second, even accepting arguendo that the plaintiffs had alleged a genuinely "direct" theory of liability against Pheasant Wood, the requisite state action is missing.  The plaintiffs have neither alleged nor argued that Pleasant Wood's conduct was pursuant to a government's policy or custom.  See Monell, supra, 436 U.S. at 695.[4]

---

[4]In addition, for the sake of completeness it should be noted that there are recognized occasions when a private corporation's conduct can be fairly attributed to the state.

8

It thus becomes readily apparent that the primary case cited by Palmer is inapposite. The court in <u>Bolin v. Black</u>, 875 F.2d 1343, 1347 (8th Cir.), <u>cert. denied</u>, 493 U.S. 993 (1989), held, after noting that section 1983 liability cannot be premised on the doctrine of respondeat superior, "a cause of action predicated on a supervisor's failure to supervise or control his subordinates may be maintained 'only if [a defendant] demonstrated deliberate indifference or tacit authorization of the offensive acts.'" <u>Id.</u> (citation omitted). However, <u>Bolin</u> involved a case against the <u>individual</u> supervisors who permitted correctional officers to physically abuse inmates following a prison disturbance. <u>Bolin</u> simply does not address the situation presented here, where a plaintiff seeks to hold a private corporation--as opposed to an individual supervisor--liable under section 1983 for its alleged deliberate indifference to its

---

Specifically, a private corporation's acts are deemed indirect state action when there exists:

> "(1) . . . an elaborate financial or regulatory nexus between [defendant] and the government . . . which compelled [defendant] to act as [it] did, (2) an assumption by [defendant] of a traditional public function, or (3) a symbiotic relationship involving the sharing of profits."

<u>Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico</u>, 84 F.3d 487, 493 (1st Cir. 1996) (quoting <u>Rodriguez-Garcia v. Davila</u>, 904 F.2d 90, 96 (1st Cir. 1990)). Plaintiff does not argue, nor does it appear to the court, that any of these inquiries are relevant here.

9

employee's conduct.  Moreover, in <u>Bolin</u> the defendant supervisors themselves were acting under color of law.

Third, although plaintiffs have alleged a troubling series of events perpetuated by Smith and other employees of Pheasant Wood against Irene Palmer, the incidents preceding the fake arrest, when taken as true, do not reach constitutional proportions--not a single incident involved an action under color of law or foreseeably would lead to such action.  Accordingly, the court rejects plaintiffs' assertion that the corporate defendants created an environment fostering an unreasonable risk of constitutional injury to Irene Palmer.

Finally, plaintiff contends that any claims against Pheasant Wood Nursing Home should be held "in abeyance" by the court because plaintiff Irene Palmer is presently awaiting a right-to-sue letter from the Equal Employment Opportunity Commission with respect to claims brought under other federal laws.  This argument is also unpersuasive, as dismissal of the section 1983 claims would not necessarily prejudice plaintiff from adding additional claims should it become appropriate to do so.

Accordingly, the court grants defendant Pheasant Wood's motion for judgment on the pleadings as to Count XVI insofar as it asserts a cause of action under 42 U.S.C. § 1983. Furthermore, as plaintiffs do not argue that Sowerby Healthcare

10

is liable under 42 U.S.C. § 1983, judgment shall be entered in favor of said defendant on such count as well.

### 2. Counts XII, XIV, and XVII

Pheasant Wood argues that plaintiffs' state law claims for negligent supervision (Count XII), negligent retention (Count XIV), and loss of consortium (Count XVII) are barred by the New Hampshire Workers' Compensation Law, Revised Statutes Annotated (RSA) 281-A:8 (Supp. 1995), as those claims seek remedies for personal injury and loss of consortium.[5]

The well-settled rule in New Hampshire is that an employee

---

[5]Plaintiffs' only response in their objection is that wrongful termination claims against an employer are not barred by the Workers' Compensation Law. In support thereof, plaintiffs assert that the conduct of Smith was of the type that public policy would not condone. As the complaint does not contain a count for wrongful discharge in violation of public policy, the court will not address plaintiffs' argument other than to observe that to prove wrongful discharge under New Hampshire law a plaintiff must show that

> "the defendant was motivated by bad faith, malice, or retaliation in terminating [her] employment," [Cloutier v. Great Atlantic & Pacific Tea Co., 121 N.H. 915, 921,] 436 A.2d 1140, 1143 [1981], and must also "demonstrate that [s]he was discharged because [s]he performed an act that public policy would encourage, or refused to do something that public policy would condemn," [id. at 922, 436 A.2d at 1144].

Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 428 (1st Cir. 1996) (emphasis added).

11

cannot maintain a common-law action against her employer "'for personal injuries rising out of the employment relationship.'" Miller v. CBC Cos., 908 F. Supp. 1054, 1068 (D.N.H. 1995) (quoting O'Keefe v. Associated Grocers of New England, Inc., 120 N.H. 834, 835-36, 424 A.2d 199, 201 (1980)).

Accordingly, the court dismisses Counts XII and XIV, as well as Count XVII insofar as it states a claim against Pheasant Wood.


B.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s]

12

essential to [his] case." <u>Celotex Corp. v. Catrett,</u>, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993) (quoting <u>Anderson</u>, <u>supra</u>, 477 U.S. at 256), <u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." <u>Id.</u> at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. <u>Anderson</u>, <u>supra</u>, 477 U.S. at 255.

<u>Counts XIII, XV, XVI, XVII</u>

Defendant Sowerby Healthcare requests that the court enter judgment in its favor as to the claims for negligent supervision (Count XIII), negligent retention (Count XV), respondeat superior (Count XVI), and loss of consortium (Count XVII) because it had no duty with respect to the supervision or retention of the employees of Pheasant Wood, who allegedly harmed plaintiff Irene Palmer.[6]

---

[6]New Hampshire recognizes the tort of negligent supervision as it is set forth in the RESTATEMENT (SECOND) OF AGENCY:

13

Sowerby Healthcare maintains that it was not the employer of either Irene Palmer or David Smith.[7]  Plaintiffs respond that Sowerby Healthcare, in its capacity as manager, assumed an independent duty to properly supervise Smith.

Under New Hampshire law, employers have a nondelegable duty to keep the workplace safe.  Leeman v. Boylan, 134 N.H. 230, 234, 590 A.2d 610, 613 (1991); Tyler v. Fuller, 132 N.H. 690, 691, 569

---

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
    (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
    . . . .
    (c) in the supervision of the activity; . . . ."

Cutter v. Town of Farmington, 126 N.H. 836, 840-41, 498 A.2d 316, 320 (1985) (quoting RESTATEMENT (SECOND) OF AGENCY § 213 (1958)). Similarly, the Supreme Court of New Hampshire has recognized the existence of a cause of action for negligently retaining an employee when a "person conducting an activity through servants or agents is . . . negligent or reckless . . . in the employment of improper persons." Marquay v. Eno, 139 N.H. 708, 718-19, 662 A.2d 272, 280 (1995).  After reviewing the elements of the torts of negligent supervision and retention, the court concludes that although premised upon theories of direct, as opposed to vicarious, liability, both ordinarily require as a precondition to liability that the defendant either employ the person perpetrating the harm or be in an agency relationship with such person.  However, as is discussed infra, a third party may assume the employer's duty.


[7]Apparently recognizing that it technically was not plaintiff's employer, Sowerby Healthcare does not argue that it is protected by the immunity conferred by the Workers' Compensation Law.

14

A.2d 764, 765 (1990); Hall v. Tibert, 132 N.H. 620, 621, 567 A.2d 593, 594 (1989). However, an injured employee may seek recovery from a party who is not her employer if such party has assumed an independent duty to provide a safe workplace. Leeman, supra, 134 N.H. at 235-36, 590 A.2d at 613-14. An important consideration is whether the entity "'independently undertook the duty to maintain safe working conditions,'" Singh v. Therrien Management Corp., 140 N.H. 355, 357, 666 A.2d 1341, 1342 (1995) (quoting Leeman, supra, 134 N.H. at 236, 590 A.2d at 614). Cf. RESTATEMENT (SECOND) OF TORTS § 321A (1965).[8]

For example, when a corporation's affiliate provides maintenance and supervision services to the corporation, the

---

[8]Such section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>     (a) his failure to exercise reasonable care increases the risk of such harm, or
>     (b) he has undertaken to perform a duty owed by the other to the third person, or
>     (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 321A (1965).

15

affiliate may have undertaken an independent duty of care to the corporation's employees.  See Singh, supra, 140 N.H. at 357, 666 A.2d at 1342.  In a similar vein, a parent corporation that takes "affirmative steps" to provide "'management, engineering and safety services'" to its subsidiary has been held liable for the negligent performance of such duties.  See Leeman, supra, 134 N.H. at 235, 590 A.2d at 614 (discussing and quoting from Boggs v. Blue Diamond Coal Co., 590 F.2d 655, 662 (6th Cir.), cert. denied, 444 U.S. 836 (1979)).

Although Singh and Leeman concern the duty of care undertaken by an affiliate corporate and parent corporation, respectively, the court agrees with plaintiff that a wholly independent corporation such as Sowerby Healthcare may properly be found to have undertaken a duty of care under the right circumstances.  Moreover, although such cases dealt with an independent duty undertaken to provide a safe workplace, they do not foreclose plaintiffs from asserting a defendant undertook a duty of non-negligent supervision.

In support of Sowerby Healthcare's motion for summary judgment, its president states, by affidavit:

> David Smith was neither an employee nor an agent of Sowerby Healthcare, Inc.  He was an employee solely of Pheasant Wood Nursing Home, Inc. Sowerby Healthcare, Inc. exercised no supervisory authority over David Smith and had no right to

16

terminate David Smith's employment. Affidavit of Dwight D. Sowerby ¶ 4. According to the president of Sowerby Healthcare, its function was "to provide accounting, data processing, and/or consulting services" to Pheasant Wood. Id. ¶ 3. The affidavit further states that neither Sowerby Healthcare nor Pheasant Wood owns stock in the other corporation. Id.

Plaintiffs respond that although Sowerby Healthcare did not technically "employ" Smith, it assumed an independent duty to supervise and manage the employees of Pheasant Wood, such as Smith.[9] In support thereof, plaintiffs note that the contract between Pheasant Wood and Sowerby Healthcare includes such services as management information services, human resources consultation, operations consultation, consultant dietician services, and facility operation and maintenance consultation. See Management Services Contract (attached to Sowerby's supplemental affidavit). Plaintiffs also submit an affidavit of B. Irene Palmer, in which she states that Sowerby Healthcare, "through its officers, agents, employees, and/or representatives exercised control over the workplace and employees at Pheasant

_____

[9]Plaintiffs also assert that Sowerby Healthcare undertook a duty to provide for the safety of the workplace at Pheasant Wood. As such contention is not present in the complaint, the court will not address it.

17

Wood," and that "David Smith would often report to Sowerby Health Care, Inc. regarding the activities and employees at Pheasant Wood Nursing Home, Inc." Affidavit of B. Irene Palmer ¶¶ 1, 4. According to plaintiffs, Sowerby Healthcare thus acted in a managerial capacity, which included the supervision of employees of Pheasant Wood such as David Smith.

The court finds and herewith rules that a genuine issue of material fact exists as to whether, through its express contract and by its conduct, Sowerby Healthcare undertook a duty to supervise Smith, and therefore it would be improper to dismiss the claim for negligent supervision against Sowerby Healthcare at this time. When viewed in a light most favorable to plaintiffs, the evidence at least arguably indicates that Sowerby Healthcare played either a supervisory or an advisory role to Pheasant Wood employees.

However, the claim of negligent retention should be dismissed. Plaintiffs have submitted no evidence to support a conclusion that Sowerby Healthcare had the authority to discharge Smith, and therefore there is no evidence on the record to rebut Dwight Sowerby's affidavit in which he states that Sowerby Healthcare had no authority to terminate Smith.

Accordingly, the court denies Sowerby Healthcare's motion with respect to the claims for negligent supervision (Count XIII)

18

and loss of consortium (Count XVII).  However, it grants the motion with respect to the claim for negligent retention (Count XV).  Finally, the court grants Sowerby Healthcare's motion for summary judgment as to the claim for respondeat superior (Count XVI), given the lack of an employment or agency relationship between Sowerby Healthcare and Smith.

## C.  Plaintiffs' Objection to Order of the Magistrate Judge

Plaintiffs move pursuant to Rule 72(a) to set aside a ruling of Magistrate Judge Muirhead entered on December 29, 1995, denying plaintiffs' Petition to Attach with Notice certain properties of defendants Pheasant Wood and Sowerby Healthcare. The magistrate judge entered his ruling after conducting a hearing pursuant to RSA 511-A:3.

### 1.  Standard of Review and Powers of District Judge

The standard governing the district court's review of a magistrate judge's decision is determined by whether or not the underlying motion is considered dispositive.  For nondispositive matters, the district court will affirm unless the movant shows that the magistrate judge's ruling was clearly erroneous or contrary to law.  Rule 72(a), Fed. R. Civ. P.; 28 U.S.C. § 636(b)(1)(A).  Accordingly, as a petition to attach is

19

nondispositive for purposes of 28 U.S.C. § 636(b)(1)(A),[10] review of a magistrate judge's order is governed by the "clearly erroneous" standard. See, e.g., Westin Hotel v. Newmarket Software, No. 87-400, slip op. at 1 (D.N.H. Mar. 7, 1989) (Loughlin, J.) (reviewing magistrate's denial of petition for prejudgment attachment under clearly erroneous standard applicable to nondispositive motions).

If the magistrate judge's decision warrants modification or reversal, the district court may either (1) set aside that portion of the magistrate judge's order that is clearly erroneous or contrary to law, or (2) "substitute its own decision on all or part of the issues before the magistrate." MOORE'S FEDERAL PRACTICE, supra note 11, ¶ 72.08[7.--4]. Furthermore, the district court has the discretion "to hear oral argument, take evidence, or decide the matter on the papers previously submitted." Id.

---

[10]All motions are deemed nondispositive

> except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A); 7 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 72.03[1] (2d ed. 1996).

20

## 2. The Merits

A federal court considering a petition for prejudgment attachment applies the law of the state in which it sits. Rule 64, Fed. R. Civ. P.; Diane Holly Corp. v. Bruno & Stillman Yacht Co., 559 F. Supp. 559, 560 (D.N.H. 1983) (collecting cases). In New Hampshire, the plaintiff has the burden in the attachment hearing of showing "that there is a reasonable likelihood that [it] will recover judgment including interest and costs on any amount equal to or greater than the amount of the attachment." RSA 511-A:3.

Although no New Hampshire state court has interpreted the meaning of the phrase "reasonable likelihood", this court has ruled that a plaintiff must make "a strong preliminary showing that he or she will ultimately prevail on the merits and obtain judgment in the requested amount . . . ." Diane Holly Corp., supra, 559 F. Supp. at 561; accord Chi Shun Hua Steel Co. v. Crest Tankers, Inc., 708 F. Supp. 18, 25 (D.N.H. 1989). The plaintiff's showing "must be established by proof greater than proof by a mere preponderance of evidence." Chi Shun Hua Steel Co., supra, 708 F. Supp. at 25; Diane Holly Corp., supra, 559 F. Supp. at 561.

Largely for the reasons outlined above in support of the court's decision to dismiss the claims against Pheasant Wood, the

court must deny plaintiffs' objection to the magistrate judge's ruling denying plaintiffs' petition to attach the property of Pheasant Wood.[11]

As for defendant Sowerby Healthcare, the primary remaining claim against it is the claim for negligent supervision.[12] The court in its discretion elects to conduct an independent review of the arguments and offers of proof before the magistrate judge and has therefore considered a tape recording of the hearing.

In their objection to the magistrate judge's ruling, plaintiffs argue that Sowerby Healthcare had undertaken an independent duty to Palmer by virtue of Sowerby Healthcare's management of the personnel at Pheasant Wood, and cite Singh,

---

[11]Plaintiffs appear to argue that claims for negligent and intentional infliction of emotional distress are viable against Pheasant Wood because Smith was Pheasant Wood's "alter ego". However, plaintiffs bring such claims only against Smith (Counts IV and V) and against Pheasant Wood under the doctrine of respondeat superior (Count XVI). As there is no claim for negligent or intentional infliction of emotional distress brought directly against Pheasant Wood, plaintiffs' argument fails as a matter of course. Moreover, such claims, even if they had been properly brought, are likely barred under the Workers' Compensation Law. See Miller, supra, 908 F. Supp. at 1068.

[12]In their motion objecting to the magistrate judge's ruling, plaintiffs also argue the viability of the claim of intentional infliction of emotional distress against Sowerby Healthcare. However, the complaint alleges only such claim against Smith, with another count against Sowerby Healthcare under respondeat superior principles. As there has been no evidence that Smith was Sowerby Healthcare's agent or employee, the respondeat superior theory must fail.

22

<u>supra</u>, which the court has discussed <u>supra</u>, Part B. Plaintiffs represented at the hearing that Sowerby Healthcare oversaw and had supervisory capability over the staff at Pheasant Wood. According to plaintiffs, people would frequently be sent from the Sowerby Healthcare office to conduct supervision of Pheasant Wood employees. In addition, Pheasant Wood staff would attend administrative meetings at Sowerby Healthcare. Sowerby Healthcare represented, however, that while it provided management services and would run seminars for the staff at Pheasant Wood, Smith reported to Dwight Sowerby in his capacity as president of Pheasant Wood Nursing Home, Inc.

After reviewing the respective offers of proof presented at the hearing, the court finds that the magistrate judge's decision to deny plaintiffs' petition to attach was not clearly erroneous, even in light of the new legal theory presented in plaintiffs' objection to the magistrate judge's order. They did not succeed in showing a reasonable likelihood of success at the hearing, given Sowerby Healthcare's representation that Smith was employed and supervised by Pheasant Wood.[13]

---

[13]In denying plaintiffs' petition to attach, the magistrate judge ruled that such claim likely was barred by the Workers' Compensation Law exclusion. However, from the court's review of the hearing before the magistrate judge, it appears that the parties conceded that Sowerby Healthcare did not technically employ Palmer. Nonetheless, from the court's independent review

Moreover, even considering the evidence submitted by plaintiffs in opposition to defendants' motion for summary judgment, plaintiffs have not succeeded in showing a reasonable likelihood of success on the merits. To summarize, plaintiffs produced the contract concerning Sowerby Healthcare's provision of management services to Pheasant Wood, as well as an affidavit of Irene Palmer in which she states that Sowerby Healthcare exercised control over the employees at Pheasant Wood and that David Smith reported to Sowerby Healthcare about the activities and employees at Pheasant Wood. See Discussion, supra, Part B. While plaintiffs have raised a genuine issue of material fact for summary judgment purposes, they fall short of showing a reasonable likelihood of success on the merits of their claim that Sowerby Healthcare undertook an independent duty of care to supervise Smith, especially given Dwight Sowerby's affidavit stating that Sowerby Healthcare had no supervisory responsibility over Smith. See id.

Accordingly, the court denies plaintiffs' motion to set aside an order of the magistrate judge.

---

of the matters before the magistrate judge, it appears evident that the magistrate judge's ultimate decision to deny the petition to attach must be upheld.

## Conclusion

For the reasons set forth above, the court grants in part and denies in part the motion for judgment on the pleadings of defendants Pheasant Wood and Sowerby Healthcare (document 33), which has been converted, in part, to a motion for summary judgment. The court denies the plaintiffs' motion pursuant to Rule 72(a), Fed. R. Civ. P. (document 16), objecting to an order of Magistrate Judge Muirhead, although the portion relating to Sowerby Healthcare is modified as set forth herein.

To summarize, the following counts have been dismissed:

- Count XII

- Count XIV

- Count XV and

- Count XVII against Pheasant Wood.

Finally, Count XVI (respondeat superior) remains viable, as there may be a lingering basis to hold Pheasant Wood liable for Smith's alleged defamation of Irene Palmer. However, all other aspects of Count XVI are dismissed.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

August 20, 1996

cc: James J. Bianco, Jr., Esq.

25

Roy A. Duddy, Esq.
John R. Falby, Jr., Esq.
Brackett L. Scheffy, Esq.
Robert T. Mittelholzer, Esq.
Robert E. McDaniel, Esq.